WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Alfredo Peralta,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　　Respondents. | No. CV-13-02224-TUC-BPV<br><br>**ORDER** |

On December 16, 2013, Jose Alfredo Peralta, ("Petitioner"), an inmate confined in the Arizona State Prison Complex, Kaibab Unit, in Winslow, Arizona, filed through counsel a Petition for Writ of Habeas Corpus by a person in state custody, pursuant to title 28, U.S.C. § 2254. (Doc. 1.)[1] Before this Court are the Petition, with accompanying appendix[2], Respondents' Answer with accompanying exhibits[3] (Doc. 12), and Petitioner's Reply (Doc. 18).

In accordance with provisions of Title 28, U.S.C. § 636(c)(1), all parties consented to proceed before a United States Magistrate Judge to conduct any and all further proceedings in this case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed. (Docs. 11 & 12.)

For the reasons discussed below, the Magistrate denies the Petition and dismisses

---

[1] "Doc." refers to the documents in this Court's file.

[2] All appendices cited in this Order refer to the Appendix ("App.") attached to the Petition.

[3] All exhibits cited in this Order refer to the Exhibits ("Exs.") attached to the Answer.

this case in its entirety.

**I.     Factual and Procedural Background**

    A.     <u>Trial Court Proceedings</u>

Petitioner was indicted in Arizona Superior Court, Pima County, cause number CR 20010421, on one count of attempted armed robbery and attempted aggravated robbery, one count of burglary in the first degree, four counts of aggravated assault with a deadly weapon, and four counts of aggravated assault of a minor under fifteen. (App 1, Indictment.) The appellate court summarized the facts of the case as follows:

> Late one night, Peralta and another man knocked on the door of a one-bedroom house where S. lived with his girlfriend, her niece, and four children. Peralta pointed a gun at S., demanding to know who had "jacked [his] cousin." After S. denied knowing what Peralta was talking about, Peralta pointed the gun at the children and threatened to shoot them. S., his girlfriend, and the four children fled to the bathroom and locked themselves inside it. Peralta ordered S. to come out and began kicking in the bathroom door, threatening to shoot through it. After another associate outside yelled the "cops" were coming, Peralta ran out of the house and fled. He was apprehended shortly thereafter.

(Ex. A at 2.)[4]

Following a jury trial conducted in Petitioner's absence, Petitioner was convicted of burglary, three counts of aggravated assault, and four counts of aggravated assault on a minor under the age of fifteen. (*See* Ex. A at 1-2, Ex. D, Reporter's Transcript ("R.T."), 08/20/01 at 2-6.) Petitioner was apprehended in March, 2005 (*see* Ex. P at 1), and, on May 11, 2005, the trial court sentenced Petitioner and imposed presumptive concurrent prison terms except on the counts involving the minors, for which it imposed consecutive

---

[4] Statements drawn from the state appellate court's decision are afforded a presumption of correctness that may be rebutted only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Wainright v. Witt*, 469 U.S. 412, 426 (1985) (state court's findings are entitled to a presumption of correctness); *Runningeagle v. Ryan*, 686 F.3d 758, 762, n.1 (9th Cir. 2012)(statement of facts drawn from the state appellate court's decision is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009)(same).

prison terms of seventeen years for each, without the possibility of early release under the dangerous crimes against children statute, A.R.S. § 13-604.01 for a total sentence of 78.5-years' imprisonment. (Ex. A, at 1-2; Ex. F, R.T. 05/11/05 at 6-7; App. 1 Minute Entry 05/11/05.)

B.  Direct Appeal

Petitioner, through counsel, timely filed an appeal, arguing that the trial court had committed fundamental error by sentencing him under the Dangerous Crimes Against Children statute, arguing that the jury should have, but did not expressly find, that he had "targeted" the child victims for sentencing purposes under the statute. (Ex. G.) The appellate court found the claim legally meritless because targeted conduct was inherent in the convictions for intentional assault, *i.e.*, intentional assault and "targeted" assault were synonymous concepts. (Ex. A, at 3-5.) On December 12, 2006, the Arizona Supreme Court denied a petition for review of the appellate court's decision. (*See* Ex. J.)

C.  Petition for Post-Conviction Relief

On May 25, 2006, Petitioner filed a notice of post-conviction relief. (Ex. K.) On July 31, 2007, Petitioner, through counsel, filed a petition for post-conviction relief (PCR) asserting that he was deprived of his state and federal constitutional rights to the effective assistance of counsel because trial counsel advised him to leave the country prior to trial without advising Petitioner he had the right to confront witnesses against him, and appellate counsel failed to raise the issue of trial counsel's ineffectiveness on appeal. (Ex. L, at 2.) Petitioner filed an affidavit stating that he had spoken to counsel the morning of trial, and that counsel told him he "should abscond to Mexico if possible" because he "faced certain conviction." (Ex. L, Ex. 1 "Peralta Affidavit".) Petitioner also avowed that local relatives had heard this advice and urged him to follow it. *Id.*

The trial court denied the petition, making several findings. (Ex. P.) First, the trial court found "overwhelming evidence in the record showing that trial counsel did not, in fact, advise the Petitioner to abscond from trial" including an affidavit from trial counsel, as well as the evidence contained in the record from the trial and sentencing, which demonstrated that counsel informed the court that he had phoned Petitioner the morning

of trial and told him to appear for trial. (Ex. P at 3.) Additionally, the trial court noted that after Petitioner was apprehended he never informed anyone that he fled the country on the advice of counsel, that he told a pretrial services representative that he failed to appear for trial because a relative in Mexico had died, and later told a presentence report writer that he had been too scared to appear for trial. (*Id*.)  The court found no need to address Petitioner's assertion that counsel was unaware that A.R.S. § 13-604.01 required the State to prove that Petitioner had "targeted" the child victims in this case, and that it was this failure to know the law that led him to advise the Petitioner to abscond, because the Court found no evidence that Petitioner was advised to flee, thus there was no need to address these particular facts. (*Id*. at 3, n.2.) Finally, the trial court found no need to address Petitioner's claims of prejudice because the court found that counsel's performance was not deficient. The trial court further found that Petitioner's claim that appellate counsel was ineffective failed because it lacked merit and because the effectiveness of trial counsel could not be challenged on direct appeal. (*Id*. at 4.) Finding no colorable claim, the trial court summarily dismissed the petition. (*Id*. at 4.)

Petitioner moved for a rehearing, arguing that the contradictory affidavits regarding whether counsel advised Petitioner to abscond warranted an evidentiary hearing. (Ex. Q) The trial court denied Petitioner's motion, and affirmed its earlier ruling. (Ex. R.) In a petition for review to the Arizona Court of Appeals, Petitioner argued that the trial court abused its discretion in denying Petitioner an evidentiary hearing. (Ex. S.) The state conceded the error, and the appellate court remanded the case for further proceedings, including, upon a finding of a colorable claim of prejudice, an evidentiary hearing. (Ex. T.)

On September 9, 2009, the trial court noted that, as to prejudice, Petitioner had indicated "on multiple occasions that he would have testified if given the chance." (Ex. U.) The trial court found it necessary to set an evidentiary hearing to address both counsel's performance and whether, if counsel's performance was deficient, Petitioner suffered any prejudice as a result. (*Id*.) Following an evidentiary hearing, the trial court considered the testimony at the evidentiary hearing, the credibility of the witnesses

including their memories and the consistency of their testimony. (Ex. O, at 107.) The trial court found that, pursuant to the *Strickland*[5] test, trial counsel was not ineffective, that is "he didn't fall below the standard of the community, and that even the alleged ineffectiveness, had it existed . . . would not have prejudiced [Petitioner]." (*Id.;*) (Ex. O; *see also* Ex. V, at 2.) The trial court affirmed its previous order and denied the petition for post-conviction relief. (Ex. V, at 2.)

Petitioner, through counsel, filed a petition for review from the trial court's denial of PCR relief in the court of appeals. (Ex. W.) Petitioner argued, generally, that the trial court improperly ignored the weight of the evidence, and the credibility of the witnesses when deciding whether counsel advised Petitioner to flee to another country, and the court failed to apply clearly established law regarding counsel's responsibility to ensure his client was aware of his right to testify at trial. (Ex. W at 8.)

The appellate court first addressed Petitioner's claim that trial counsel was ineffective in failing to advise him "he had the right to testify about not targeting the children," thereby failing to discuss the possibility of an inconsistent defense that Petitioner had not committed the charged offenses, but if he had, he had not targeted children. (Ex. X at 3.) The appellate court described trial counsel's testimony, though lacking in specific recollection, that Petitioner "would have gone through . . . impeachment with prior felony convictions, and [whether to testify] would have been [Peralta's] decision." (Ex. X at 4.) Counsel further explained that "he had not believed an inconsistent defense or a defense specific to the dangerous crimes against children charges was possible "[u]nder the facts of the case." (*Id.*) The appellate court, citing *Strickland*, found that the Petitioner presented no evidence that counsel's performance in this regard fell below prevailing professional norms, and therefore, could not say that the trial court abused its discretion in rejecting this claim. (*Id.*) The appellate court also refused to reweigh the evidence and find that the trial court had abused its decision in rejecting Petitioner's claim that trial counsel had advised him to flee the country. (*Id.* at

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

4-5.) The appellate court found the trial court's decision supported by substantial evidence and denied relief. (*Id*. at 5.)

The Arizona Supreme Court denied a petition for further review on April 29, 2013. (Ex. Y)

D. Federal Habeas Petition

Peralta filed this Petition for writ of habeas corpus in this Court on December 16, 2013. (Doc. 1.) Petitioner presents one ground for relief. Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to advise Petitioner of his right to testify to refute the allegations of targeting the minor victims.

**II. Discussion**

A. Standard of Review

Because Peralta filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

B. Timeliness

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).

Petitioner had until one year after his conviction and sentence became final to file his federal petition. Respondents do not contest the timeliness of the Petition. Upon review of the state-court record, the Court finds that, pursuant to the AEDPA, the Petition is timely.

C. Procedural Default

In Ground One, Petitioner alleges that he was denied effective assistance of counsel, in violation of the Sixth Amendment, because his attorney failed to advise him

- 6 -

of his right to testify to refute the allegations of targeting the minor victims.

Respondents assert that Petitioner has procedurally defaulted this claim because the claim Peralta raised in state court was based on his ultimately discredited contention that defense counsel had advised him to abscond, thereby leading to a violation of his constitutional right to testify, but that Peralta now claims that the fact that defense counsel failed to expressly inform him before trial of his right to testify in defense of the charges against him, without more, constituted ineffective assistance of counsel because the lack of such information led to his decision to abscond, thereby resulting in a violation of his constitutional right to testify. (Answer at 7-8.)

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971).

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). The failure to exhaust subjects the petitioner to dismissal. *Gutierrez v. Griggs*, 695 F.2d 1195 (9th Cir. 1983).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim

- 7 -

could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n. 1; *see also Gray v. Netherland,* 518 U.S. 152, 161-62 (1996).

The Magistrate Judge disagrees with the State's procedural analysis of Petitioner's claim. Petitioner asserted this claim in both his PCR (Ex. L at 3, ll. 2-3), and his petition for review from the trial court's denial of his PCR (Ex. W at 9). Moreover, even if this claim had not been clearly presented in both the PCR and the petition for review[6] the claim is nonetheless exhausted as a result of the appellate court's consideration of the claim. *See* Ex. X ("[Petitioner] also contends the court 'failed to apply clearly established law regarding counsel's responsibility to ensure his client is aware of his right to testify at trial.'")

Thus, even if Petitioner had not clearly presented a claim to the court of appeals that his trial counsel was ineffective for failing to advise him of his right to testify prior to trial, the appellate court's consideration of the issue effectively exhausted it. *See Sandgathe v. Maass*, 314 F.3d 371, 376-77 (9th Cir. 2002) (concluding that trial court's express consideration of federal claim that was not fairly presented precludes any exhaustion defense); *Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011) ("Regardless of whether or how a petitioner has presented a claim, however, that claim has been exhausted if the state courts have in fact ruled on its merits."). Thus, the Magistrate Judge addresses the merits of Petitioner's claims below.

D.     Merits

The AEDPA established a "substantially higher threshold" for habeas relief with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's " 'highly deferential

---

[6] The Court acknowledges that the Petitioner's briefing on this issue, as well as his factual assertions, whether Petitioner fled because he was advised by counsel to flee, and therefore waived his right to testify, or was not advised he could testify and therefore fled, has been somewhat circular and inconsistent.

standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Here, the Arizona Court of Appeals applied the test from *Strickland*, 466 U.S. at 688, in rejecting Petitioner's argument that the trial court "failed to apply clearly established law regarding counsel's responsibility to ensure his client is aware of his right to testify at trial." (See Ex. X, at 2.) The Arizona Supreme Court denied review without issuing a written opinion. (Ex. Y.) Accordingly, the Court looks to the appellate court's decision to ascertain whether the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"The threshold question under AEDPA [is] whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time of the relevant state-court decision. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

1  Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal
2  ground" on a constitutional principle advanced by a petitioner, even if lower federal
3  courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-
4  77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme
5  Court authority is binding, circuit court precedent may be "persuasive" in determining
6  what law is clearly established and whether a state court applied that law unreasonably.
7  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by*
8  *Lockyer v. Andrade*, 538 U.S. 63 (2003).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at

25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, ---, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In conducting review under § 2254(d)(1), this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, –––U.S. ––––, 131 S.Ct. 1388, 1398–99 (2011).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

### 1. Ineffective Assistance of Counsel Claims

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy two separate requirements: he must (1) show that counsel's performance fell below objective standards of reasonableness and "outside the wide range of professionally competent assistance", and (2) establish that counsel's performance prejudiced Petitioner by creating "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 687–94; *see also Williams,* 529 U.S. at 390; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). *Strickland* is the clearly established law for ineffective assistance of counsel claims. *See Richter*, 556 U.S. at ---, 131 S.Ct. at 780.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

the time." *Strickland*, 466 U.S. at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution," including the Fifth, Sixth and Fourteenth Amendments. *Id.* at 51. The Ninth Circuit has also recognized that "[a]n accused's right to testify is a constitutional right of fundamental dimension." *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.1993), citing, *inter alia*, *Rock, supra,* at 51-53; *United States v. Edwards,* 897 F.2d 445, 446-47 (9th Cir. 1990). The trial judge, however, has no duty to advise the defendant of this right. *Joelson*, 7 F.3d at 177.

The first question to be addressed is whether counsel had a *Strickland* duty to tell Petitioner that he had a right to testify, even if, in his professional judgment and as a matter of trial strategy, counsel believed the decision to testify would not benefit the Petitioner. Without citation to any caselaw, Petitioner asserts that, because a criminal defendant has a constitutional right to testify in his own defense, which may only be knowingly and intelligently relinquished by the defendant, it follows that "counsel's failure to advise his client of his fundamental right to testify, to refute specific elements of the offenses charged, whether counsel agreed with the client's choice or not, deprives the Petitioner of a substantive right." (Petition, at 14.) Aside from this conclusory statement, Petitioner has asserted no other grounds for demonstrating that, assuming counsel failed to inform Petitioner of his constitutional right to testify in his own defense, that this alone demonstrates that counsel's performance fell below an objectively reasonable professional standard.

This Court is unaware of any Supreme Court law establishing that counsel has a duty to inform a defendant of his right to testify, and Petitioner has not provided this Court with any reference to any law in support of such a claim. This Court is aware of one circuit court which has held that defense counsel is responsible "for advising the

- 12 -

defendant of his right to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992).

> [I]f defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted within the range of competence demanded of attorneys in criminal cases, and the defendant clearly has not received reasonably effective assistance of counsel.

*Teague, supra,* at 1534, citing *Strickland, supra,* at 687, in turn quoting *McMann v. Richardson,* 397 U.S. 759, 770-71 (1970)(internal quotation marks omitted).

While this may be sound reasoning, Petitioner has not brought any authority to the attention of this Court that would suggest that the Eleventh Circuit *per se* unreasonableness approach has taken root in the Ninth Circuit, or is in fact clearly established law as determined by the holdings of the United States Supreme Court.

In *Deluca v. Lord*, 858 F.Supp. 1330 (S.D.N.Y. 1994), the District Court for the Southern District of New York found that the right to testify is a fundamental right and its waiver must be knowing and voluntary. Thus, the court reasoned, trial counsel has a duty to inform his client that the ultimate right to decide whether or not to testify belongs to the defendant, and if the preponderance of credible evidence indicates the defendant was not independently aware of that right, counsel is ineffective if he fails to so advise his client. *Id*. at 1360. A defendant "who is unaware that she has a right to assert her desire to testify over her attorney's wishes cannot be deemed to have waived her right knowingly and voluntarily." *Id.* at 1355.

But as the judge in *DeLuca* noted, while the right to testify is fundamental, the more difficult question concerns what actions must be taken to protect that right. The court in *Deluca*, addressed three approaches that had been suggested for protecting the defendant's fundamental right to testify, and ultimately adopted the approach taken by the court in *Teague*. *Id.* at 1355. The methods considered included: (1) holding the

defense attorney primarily responsible for safeguarding her client's right to testify, an approach which would prevent the court from invading the attorney-client relationship or unintentionally inducing the defendant to abandon her right to remain silent; (2) placing the burden of protecting the right to testify on the trial courts, ensuring that wavier of the right is both knowing and intelligent and foreclosing subsequent collateral proceedings; and (3) resting the burden of protecting the fundamental right to testify on the defendant, herself. *Id.* at 1355-56.

As one Magistrate Judge in the Eastern District of California has described the state of the law in the Ninth Circuit, however, "counsel is not constitutionally tasked with advising about rights in the abstract. Counsel is tasked with giving competent advice on whether the client should testify given the situation presented to counsel." *See United States v. Barron*, 2006 WL 3337497, *8 (E.D. Cal 2006). In *Barron*, the Magistrate Judge found precedent in *Edwards*, *supra*, as in both *Barron* and *Edwards*, the defendants claimed ignorance of their constitutional right to testify, and in *Edwards*, the Ninth Circuit held that the defendant's silence at his trial waived his right to testify for himself at his trial because to do otherwise would be to impose a duty upon the court to inform a defendant of his right to testify. *Edwards*, 897 F.2d at 447. Thus, assent to counsel's tactical decision not to have a client testify is presumed even when a defendant later claims that he was unaware that he had the right to testify. *Id.* at 446-47.

In this case, the Arizona Court of Appeals found that counsel had testified at the evidentiary hearing that he "would have gone through impeachment with prior felony convictions, and [whether to testify] would have been [Peralta's] decision. Counsel also explained that he had not believed an inconsistent defense or a defense specific to the dangerous crimes against children charges was possible '[u]nder the facts of the case." (Ex. X. at 4.) Although Respondent had no recollection of actually having this discussion with Petitioner, not surprisingly given the time between trial and sentencing, Petitioner's flight ensured that the discussion would not have taken place during the most essential time to have this discussion, during trial.

To the extent that Petitioner is challenging counsel's strategic decision, that

decision is virtually unchallengeable. *See Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir. 1983) ("Counsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance."). Moreover, Petitioner implicitly waived his right to testify when he absconded, and was thus unable to object at trial to counsel's decision not to call him. *See United States v. Pino–Noriega,* 189 F.3d 1089, 1095 (9th Cir. 1999) ("When a defendant remains silent in the face of his attorney's decision not to call him as a witness, he waives the right to testify." (internal quotation marks omitted)); *Edwards,* 897 F.2d at 447 ( "Neither the prosecution nor the court was given any reason to think the defendant desired to testify. In such circumstances, to hold that a defendant may abide by his lawyer's advice and not take the stand and then invalidate the trial because he so acted is not fair to the government." (internal quotation marks and brackets omitted)).  Moreover, Petitioner did not present any facts to the state court demonstrating that counsel's advice fell below prevailing professional norms, and makes no such argument to this Court.

Perhaps if Petitioner had attended trial, counsel's advice might have changed as the testimony developed, and a more in-depth discussion and exploration of the strategic aspects of Petitioner's testimony and potential impeachment would have taken place. As Respondents correctly note, had Peralta actually attended his trial and retracted his claim of non-participation, counsel presumably would have discussed with him at some point during trial whether he should still testify and if so, what the scope of that testimony should be. Petitioner has failed to demonstrate that a failure by counsel to inform Petitioner of his right to testify is a *per se* unreasonable act under the first prong of *Strickland*, and thus has failed to demonstrate that the state court's decision was "contrary to" clearly established federal law as determined by the Supreme Court. Petitioner has also failed to demonstrate, in the factual context of this case, that counsel's advice to Petitioner prior to trial fell below prevailing professional norms, or that the state court decision on this claim "involved an unreasonable application" of the law or "was based on an unreasonable determination of the facts in the light of the record before the state court." *See* 28 U.S.C. § 2254.

1   Petitioner has also failed to demonstrate prejudice under the second prong of
2  *Strickland*. To demonstrate prejudice, he must "show that there is a reasonable
3  probability that, but for counsel's unprofessional errors, the result of the proceeding
4  would have been different. A reasonable probability is a probability sufficient to
5  undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Petitioner "must
6  show that the [state court] applied *Strickland* to the facts of his case in an objectively
7  unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). As Respondents
8  correctly point out, even had Peralta actually retracted his claim of non-participation
9  before or during trial (rather than in hindsight years after the fact) and testified about his
10 alleged non-targeting of the children, it is highly doubtful that the jury would have
11 believed that testimony in light of the overwhelming eyewitness testimony to the
12 contrary. *See Strickland*, at 695 (to show prejudice, "[t]he defendant must show that there
13 is a reasonable probability that, but for counsel's unprofessional errors, the result of the
14 proceeding would have been different"). The Court finds that Petitioner has not met his
15 burden to show prejudice.

   In the event Petitioner appeals from this Court's judgment, and in the interests of
conserving scarce resources that otherwise might be consumed drafting an application for
a certificate of appealability to this Court, the Court on its own initiative has evaluated
the claims within the Petition for suitability for the issuance of a certificate of
appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th
Cir. 2002).

   Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an
appeal is taken by a petitioner, the district judge who rendered the judgment "shall" either
issue a certificate of appealability ("COA") or state the reasons why such a certificate
should not issue. Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the
petitioner "has made a substantial showing of the denial of a constitutional right." With
respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable
jurists would find the district court's assessment of the constitutional claims debatable or
wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

U.S. 880, 893 & n. 4, (1983)).

Upon review of the record in light of the standards for granting a certificate of appealability, the Court concludes that a certificate shall not issue as the resolution of the petition is not debatable among reasonable jurists and does not deserve further proceedings. Petitioner has failed to establish that defense counsel has an affirmative duty to inform Petitioner of the right to testify, and has failed to establish any evidence demonstrating that counsel's performance in this case fell below prevailing professional norms.

Accordingly,

IT IS ORDERED as follows:

(1) Petitioner's § 2254 habeas petition (Doc. 1) is DENIED and this case is DISMISSED with prejudice.

(2) A Certificate of Appealability is DENIED and shall not issue

(3) The Clerk of the Court shall enter judgment accordingly and close the file in this matter.

Dated this 11th day of February, 2015.

_____
Bernardo P. Velasco
United States Magistrate Judge